593 So.2d 1091 (1992)
Ronald SALVADOR and Valerie Jones, Petitioners,
v.
John E. FENNELLY, as Circuit Judge, for the Nineteenth Judicial Circuit, Martin County, Florida, Respondent.
No. 91-2998.
District Court of Appeal of Florida, Fourth District.
January 29, 1992.
Clarification or Rehearing Denied March 5, 1992.
*1092 James J. Butler and William E. Guy, Jr., Stuart, for petitioners.
Richard D. Kibbey, Stuart, for respondent.
ANSTEAD, Judge.
Petitioners seek by mandamus an order directing the trial court to set their action for immediate hearing pursuant to section 119.11(1), Florida Statutes (1989). We have previously granted relief to petitioners, and issue this opinion to explain our decision.[1]

FACTS AND PROCEDURAL HISTORY
On July 16, 1991, Ronald Salvador and Valerie Jones filed an action against the City of Stuart seeking access to particular public records allegedly maintained by the City. Petitioners assert in their petition to this court that they made numerous unsuccessful efforts to obtain an immediate court hearing as provided in section 119.11(1). On September 18, 1991, after informal requests failed, they filed a written motion for an immediate hearing. On October 10, the trial court entered an order setting a hearing for November 27, 1991. The order also directed the parties' counsel to file memoranda concerning the constitutionality of the operative statutory subsection, section 119.11(1). Prior to that hearing date we granted relief to petitioners.

LAW
Section 119.11(1) provides:
"Whenever an action is filed to enforce the provisions of this chapter [Public Records Act], the court shall set an immediate hearing, giving the case priority over other pending cases."
Petitioners cite an opinion of the attorney general, Opinion No. 80-57, which indicates that because the Public Record Act *1093 was adopted in order to promote a public interest of the highest order, its provisions should be construed liberally in favor of the public and in a manner that frustrates all evasive devices.[2] In the spirit of this opinion, and in light of the standard dictionary meaning of the word "immediate," they urge that the date scheduled by the trial court for hearing does not conform to the statute, and seek an order requiring an earlier date.
In the trial court, the City contended (1) that "immediate", as used in the Public Records Act, absent a demonstrated emergency, should be construed as meaning within a reasonable time; and (2) that the provision in the Public Records Act regarding priority for such cases is an unconstitutional encroachment on the judicial branch's constitutional authority to establish rules of procedure for the courts. We reject as patently unreasonable the City's first contention, and also reject, for reasons that follow, the second contention.
In adopting the civil rules revisions effective January 1, 1981, the Florida Supreme Court declared:
All rules and statutes in conflict with the following rules are hereby superseded as of their effective date, and any statute not superseded shall remain in effect as a rule promulgated by the Supreme Court.
The Florida Bar, 391 So.2d 165, 166 (Fla. 1980). In addition, Rule 1.010, Florida Rules of Civil Procedure, provides:
These rules apply to all actions of a civil nature and all special statutory proceedings in the circuit courts and county courts except those to which the probate and guardianship rules or the summary claims procedure rules apply. The form, content, procedure and time for pleading in all special statutory proceedings shall be as prescribed by the statutes governing the proceeding unless these rules specifically provide to the contrary. These rules shall be construed to secure the just, speedy and inexpensive determination of every action. These rules shall be known as the Florida Rules of Civil Procedure.
This court has recently held these provisions to mean that unless there is a direct conflict between a statutory provision governing court procedures and a revised rule, the statutory provision remains in effect as a rule promulgated by the Florida Supreme Court:
[T]he limitation upon the legislature enacting procedural law is not absolute. Rather, it is prohibited only in the event the proposed statute conflicts with an existing rule of procedure adopted by the supreme court. The Florida Bar Re: Amendment to Rules of Civil Procedure, Rule 1.442 (Offer of Judgment), 550 So.2d 442, 443 (Fla. 1989). We would also reference the numerous statutes on the books that involve procedural, as opposed to substantive, laws.
Williams v. First Union Nat'l Bank, 591 So.2d 1137 (Fla. 4th DCA 1992) (footnote omitted).
Section 119.11(1), Florida Statutes, dates back to the laws of 1975. Accordingly, unless something in the civil rules directly contradicts the hearing provision of a statute, that statutory provision would appear to be effective. See also, Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979); Berry v. Clement, 346 So.2d 105 (Fla. 2d DCA 1977); Lane v. Brith, 313 So.2d 91 (Fla. 4th DCA 1975), cert. denied, 328 So.2d 842 (Fla. 1976).
There are numerous court rules and statutory provisions providing for expedited procedures in the trial court. Temporary relief in family law matters is but one example. In addition, Rule 2.050(f) of the Rules of Judicial Administration requires a *1094 judge to rule on all matters submitted to her within a reasonable time, and to report to the chief judge of the court on which she serves at the end of each calendar month each case that she has held under advisement for more than sixty days. We see nothing there that means that a judge must rule on a matter at the outer limit of a reasonable period of time; nor is there an ironclad rule that she must rule on all matters within sixty days of taking them under advisement; she must merely make known to the chief judge of her court the fact that such a case exists, when it does.
Of course, the net effect of all these rules and statutory provisions places enormous pressure on the trial courts to organize and control their dockets in such a way as to make a good faith attempt to honor what in many instances may amount to confusing and conflicting mandates. There are only so many matters that can be handled on an expedited basis by a trial court already faced with a heavy case load of cases entitled to a resolution in a reasonable time. The fact that the statutory mandate for an early hearing may be difficult to accommodate does not mean, however, it must not be honored.
Florida has a strong public policy in favor of open government. That policy has received clear recognition in both the legislature and the courts. The legislature has also recognized that time can sometimes be an important element in the right of access to public records. Hence, the provision for early hearings on public records cases. This does not mean that a trial court must cancel a hearing in a juvenile dependency or other emergency proceeding in order to accommodate a public records request. It does mean, however, that a hearing, if requested, must be given priority over more routine matters, and a good faith effort must be made to accommodate the legislative desire that an immediate hearing be held. In this case, for example, it means that a hearing should be scheduled much sooner than months after the action is initiated.
We conclude that if there is no direct conflict between a statutory rule and a rule promulgated by the Supreme Court, the statutory rule stands, pursuant to Rule 1.010. Here, we do not find any such conflict between the general guidelines for the time within which cases should be resolved, or any other rule of procedure, and the statutory provision of immediacy for hearings on alleged Public Record Act violations.
WARNER, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
Let me dispel any notion that this case truly presents any public records, or government in the sunshine, issue. Plainly it does not. What we face in this case is, instead, the use of an unusual judicial power to take up an issue that had long since become moot. That mootness was, in turn, caused by either a conscious, tactical decision of lawyers or a failure of lawyering  either of which make it exceedingly improvident for us to assert our extraordinary writs jurisdiction. This case thus illustrates for me how ill-advised we have become with extraordinary writs.
Petitioners filed this public records action on July 16, 1991, and served the City of Stuart on the next day. They say that their attorney "began inquiring" of the assigned judge's judicial assistant as to the "earliest available hearing date." When that did not result in a hearing, they then wrote the assigned judge at his request on August 7, 1991, forwarding copies of pertinent papers in the court file. The letter informed the judge that petitioners required an hour of court time to present their case and that the city would also require an hour.
Note that we are already long past any possible "immediate hearing" on the matter, for it is now three weeks after the filing. Yet petitioners then waited, inexplicably, another five weeks to file a motion for an "immediate hearing" on September 18th and, when no hearing on that motion was then set, filed a motion to disqualify the judge on October 9th. He denied that motion on the next day and also entered an *1095 order setting the case for a final hearing on November 27th. Petitioners' reaction to that order was to file a new motion to disqualify the judge, which he again denied. The court apparently held a hearing on October 18th, dealing with discovery matters in the case.
Petitioners finally filed this petition for writ of mandamus on October 24th. They sought an order (writ) compelling the assigned judge to hold the "immediate hearing" required by section 119.11(1). We issued an order to show cause on November 7th, which I voted against, less than three weeks before the hearing already scheduled. After hearing from the assigned judge, who arranged for the lawyer for the city to file a specific response on his behalf, and petitioners again, we then issued an order on November 20th requiring an immediate hearing  just one week before the already scheduled hearing.
It seems more than merely silly to issue an order requiring a trial court to hold a hearing when the trial court has already scheduled one less than 10 days away. The image presented is of appellate judges rushing to say in a formal order that a lower court judge should do something, before he actually does it on his own and deprives us of the opportunity to tell him to do so. It is as though we lust to assert our powers, when ours is a deliberate and cautious authority  especially for extraordinary review.
Properly understood, the immediate hearing called for by section 119.11(1) is, in reality, a trial on the merits of petitioners' public records claim. The subject of setting trials on claims is covered by rule 1.440, Florida Rules of Civil Procedure. That rule requires the service of a notice for trial after the pleadings are closed, and the setting of a trial date at least more than 30 days from the service of the notice for trial. It follows that one might well argue that the statute is in conflict with the rule.
Beyond the constitutional implications, however, is the actual language of the statute. Not even the court suggests that the term "immediate" must be given a literal interpretation, requiring the setting of a hearing on the same day on which the pleading seeking relief under chapter 119 is filed. As it is thus obvious that the statute means something other than the literal meaning of "immediate", it is left to judges to fill in the unarticulated legislative intent. I think that the legislature had in mind "as soon as is practicable." So viewed, the statute allows the judge to analyze the particular public records claim at issue, the circumstances surrounding the case, and decide whether and what other matters on his docket might be postponed in deference to the claim.
It is not so much that the legislature's urgency in hearing public records claims is an improper infringement on the judicial power to control the judicial docket. Rather, the competing interests involved in vindicating all the various constitutional and statutory claims of right, which are the necessary fare of our primary trial courts, oblige the construction of the legislature's intent which is most consistent with the trial court's independent Article V duties under our constitutional scheme. That is simply a long-winded way of saying that it is the trial judge, not the chapter 119 applicant, who should decide how the court's finite allotment of judicial time shall be allocated among the battered spouse seeking injunctive relief, the habeas corpus applicant and the other varied civil litigants whose claims really must be heard.
We cannot turn the clock back to July for these chapter 119 claimants and give them the "immediate" hearing they, belatedly, sought from us on October 24th. Nothing we could say or do, and nothing we could tell the trial judge to say or do, will give a hearing today the immediacy and the moment to which petitioners say they were entitled in July. Extraordinary remedies exist in appellate courts not to do what might have been effectual if done earlier, but to do today only what can truly affect the outcome today.
By granting extraordinary relief under the circumstances of this petition, we foster the belief that the exceptional remedy has become the usual, the irregular routine. *1096 We imply that the traditional limitations on the extraordinary writs of mandamus, certiorari and prohibition have been abandoned in a revolution of a new judicial activism. No longer controlling is the nature of the claimed right on which the application is based; instead the form of relief itself governs. If it is mandamus, then we rush to issue it because mandamus is a speedy remedy.
Ours is a contemplative institution. We are designed to review final determinations on complete records. The role of an appellate court is founded on unhurried thought and reflection, in order that justice be rightly and properly done. Where trial courts are the place of the primary contest, appellate courts are places of study and thought and correction, but only if necessary.
By today's decision I fear that we have strayed far from our essential role and given precedent that we are prepared to use extraordinary remedies routinely. My dissent is thus compelled.
NOTES
[1] We exercise our jurisdiction to utilize a writ of mandamus here where the speedy determination of a purely legal question regarding the duty of the trial court will not only end this particular dispute, but will also hopefully furnish an authoritative guide for trial courts in the future. See State ex rel. Seaboard Air Line R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948). We also conclude that an appeal from a final order would not be adequate to vindicate petitioners' right to an immediate hearing. In addition, because we have concluded that the trial court departed from the essential requirements of law by not setting a prompt hearing, and that the error is not remediable on appeal, we could also treat the petition as one for certiorari.
[2] Petitioners also cite Kight v. Dugger, 574 So.2d 1066 (Fla. 1990) (legislature, not supreme court, regulates disclosure of public records); City of North Miami v. Miami Herald Publishing Co., 468 So.2d 218 (Fla. 1985) (same); Tribune Company v. Cannella, 458 So.2d 1075 (Fla. 1984), appeal dismissed sub nom. Deperte v. Tribune Company, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985) (Public Records Act does not permit an automatic delay in release of records, to allow employee to raise a constitutional challenge, as only the records custodian may raise such a challenge).